UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

L&W ASSOCIATES WELFARE
BENEFIT PLAN,

    Plaintiff,

v.

ESTATE OF TERANCE R. WINES,
by his Guardian, MARY H. WINES,

    Defendant.
_____/

Case No. 12-cv-13524

Paul D. Borman
United States District Judge

Laurie J. Michelson
United States Magistrate Judge

## OPINION AND ORDER GRANTING PLAINTIFF'S
## MOTION FOR JUDGMENT ON THE PLEADINGS (ECF NO. 9)

Before the Court is Plaintiff L&W Associates Welfare Benefit Plan's ("L&W" or the "Plan") Motion for Judgment on the Pleadings. (ECF No. 9.) Defendant Estate of Terance Wines ("Wines" or the "Estate") has filed a response (ECF No. 15) and Plaintiff filed a reply (ECF No. 34). On August 9, 2013, Plaintiff filed a Motion for Leave to File Supplemental Authority (ECF No. 37), to which Defendant responded (ECF No. 39) and Plaintiff replied (ECF No. 40.) On November 12, 2013, the parties stipulated to the Court issuing its ruling without oral argument. (ECF No. 42.) The Court, having thoroughly reviewed the parties' submissions, GRANTS Plaintiff's motion for judgment on the pleadings.

**INTRODUCTION**

In this action, Plaintiff L&W, a self-funded ERISA Plan in which Terance Wines was enrolled when he was seriously injured in automobile an accident while riding his motorcycle, seeks

1

a declaratory judgment that it is not obligated to pay medical expenses for which Mr. Wines has already received payment. There is no dispute that non-party Citizens Insurance Company ("Citizens") has already paid Mr. Wines's medical expenses as the no fault insurer of the automobile involved in the accident with Mr. Wines. In this action, Plaintiff L&W seeks to preclude the Estate's recovery of a double dip payment of these same medical benefits from the L&W Plan, Mr. Wines's employer's self-funded employee welfare benefit plan. L&W argues that the governing Plan documents do not permit a double dip recovery for medical expenses already paid. The Estate responds that there was no ERISA plan document in effect that precluded double dip recovery until March 17, 2010 and that Defendant is entitled to recover duplicate payments from both Citizens and the L&W Plan for medical expenses incurred up until that date.

## I. BACKGROUND

On June 14, 2008, Terance Wines was injured in an automobile accident while riding a motorcycle. (Compl. ¶ 5.) Because the accident involved a motor vehicle, the insurer of that vehicle, Citizens, was primary for the payment of personal protection insurance benefits, including medical expenses, pursuant to the Michigan No-Fault Act. *Id.* ¶ 6. Citizens has paid, and continues to pay, the medical expenses related to Mr. Wines's injuries. *Id.* ¶ 7. At the time of the accident, Mr. Wines was a participant in the L&W Plan, for which Blue Cross Blue Shield of Michigan ("BCBSM") is the claims administrator. *Id.* ¶¶ 8, 9. The L&W Plan had stop loss coverage with BCBSM which commenced after L&W paid the first $150,000 of loss out of Plan assets, an amount which has been substantially exceeded in Mr. Wines's case. Thus, both L&W and BCBSM have potential exposure for reimbursement of medical benefits on a covered loss suffered by a Plan participant. The Estate claims entitlement to double dip payments only through March 17, 2010,

the date on which Mr. Wines's Estate concedes that L&W maintained an ERISA plan that precludes his claim for double dip payments.

In prior litigation involving this same accident and these same claims for double dip payments, the Estate filed an action in Washtenaw County Circuit Court against BCBSM and Citizens.[1]  *Estate of Terance R. Wines v. Blue Cross Blue Shield of Michigan & Citizens Ins. Co.*, No. 12-108 (Washtenaw County Cir. Ct. filed Feb. 1, 2012).[2]  Believing that Mr. Wines was entitled to receive duplicate payment of his medical expenses from both Citizens and BCBSM, the Estate filed suit in Washtenaw County Circuit Court seeking to recover double dip payments from BCBSM.  According to the allegations of the State court complaint, BCBSM began making payments on Mr. Wines's claims and subsequently realized that Citizens was primarily responsible on the claims as the insurer of the vehicle involved in the accident and that the L&W Plan precluded Mr. Wines's double dip recovery.  Citizens accepted responsibility for the claims, paid Mr. Wines's medical expenses and BCBSM was reimbursed by Mr. Wines's health care providers for amounts mistakenly paid by them.  (State Court Complaint ¶¶ 13-18 (Filed as Ex. 1 to ECF No. 1, Notice of

---

[1] To the extent that the Court refers to matters outside the pleadings, it is only by way of background to give context to the genesis of the ERISA issue before this Court.  None of these matters forms the basis for this Court's ruling on the very narrow ERISA issue presented here, i.e. whether the L&W Health Care Handbook and Associate Workbook were sufficient to constitute an ERISA Plan document.

[2] The state court case originally was assigned to Washtenaw County Circuit Court Judge Timothy P. Connors, who had presided over a previous case filed by the Estate against BCBSM and Citizens, *Estate of Terance Wines v. BCBSM and Citizens Ins. Co.*, No. 09-334-NF (Washtenaw County Circuit Court 2009).  That first-filed case was dismissed without prejudice to the Estate's right to refile the case if the parties were unable to reach a settlement agreement.  The parties were not able to settle, the case was refiled, reassigned to Judge Connors by agreement of the parties and ultimately inherited by Washtenaw County Circuit Court Judge Donald E. Shelton after United States District Judge Nancy Edmunds remanded the case to state court.  *See* discussion *infra*.

Removal in *Estate of Terance R. Wines v. Blue Cross Blue Shield of Michigan & Citizens Ins. Co*. No. 12-cv-10906 (E.D. Mich. filed Feb. 29, 2012)). *See also* ECF No. 34, L&W's Reply, Ex. 1, BCBSM's Motion for Summary Disposition in Washtenaw County Circuit Court, 4 n. 1).

BCBSM sought removal of the Washtenaw County Circuit Court action to this Court and the case was assigned to Judge Nancy G. Edmunds. *Estate of Terance R. Wines v. Blue Cross Blue Shield of Michigan & Citizens Ins. Co*. No. 12-cv-10906 (E.D. Mich. filed Feb. 29, 2012). In response to the Estate's motion to remand, Judge Edmunds agreed with BCBSM that the claims asserted in the state court complaint were completely preempted by ERISA but granted the Estate's motion to remand the case against BCBSM and Citizens based upon policy considerations related to the timeliness of the removal. (*Id*., ECF No. 17, June 18, 2012 Opinion and Order Granting Plaintiff's Motion to Remand.) Notably, although Judge Edmunds's remand of the case rendered the motion moot, the Estate opposed a motion to intervene filed by L&W in the removed case before Judge Edmunds. (*Id*. ECF No. 15, Pl.'s Resp. to Motion to Intervene.)

Ultimately, following remand, the Washtenaw County Circuit Court, Judge Donald E. Shelton, entered judgment in favor of the Estate and against BCBSM, concluding that there was no governing plan document and that ERISA was not applicable to the plaintiff's claim. *Estate of Terance R. Wines v. Blue Cross Blue Shield of Michigan and Citizens Ins. Co*., (Washtenaw County Cir. Ct., Case No. 12-108-NF, Transcript of May 29, 2013 Hearing on Plaintiff's Motion for Summary Disposition at 10-11). BCBSM has appealed Judge Shelton's ruling to the Michigan Court of Appeals, *Estate of Terance Wines v. BCBSM*, Case No. 317197 (Mich. Cit. App. July 15, 2013), but no decision has been rendered. Citizens was dismissed by stipulated order in the

4

Washtenaw County Circuit Court on July 10, 2013, after judgment was rendered against BCBSM.[3]

L&W has filed this declaratory judgment action, pursuant to Section 502(a)(3) of ERISA (29 U.S.C. § 1132(a)(3)), seeking to have its rights determined by this Court, which has exclusive jurisdiction over the Estate's ERISA claim, as already determined by Judge Edmunds in her Order to Remand. As Judge Edmunds concluded before remanding Plaintiff's previously-filed action to state court, the Estate's claims for double dip payments arise under ERISA because Mr. Wines's guardian seeks to "recover health benefit payments she claim[ed were] owed to her husband under [the L&W Plan], [sought] to enforce her husband's rights under that plan, and to clarify his rights under it." *Estate of Wines*, No. 12-cv-10906, ECF No. 17, Opinion and Order Granting Remand at 8 (E.D. Mich. June 18, 2012). The Estate's claims are therefore completely preempted by ERISA. *Id. See also Wright v. Gen'l Motors Corp.*, 262 F.3d 610, 613 (6th Cir. 2001) (holding that a state common law claim is completely preempted by ERISA "when the action is to recover benefits,

---

[3] Judge Shelton's ruling has no preclusive effect on L&W's ERISA claim, which falls within the exclusive jurisdiction of this Court. *See Marrese v. Am. Academy of Orthopedic Surgeons*, 470 U.S. 373, 382 (1985) ("If state preclusion law includes [a] requirement of prior jurisdictional competency . . . a state judgment will *not* have preclusive effect on a cause of action within the exclusive jurisdiction of the federal courts.") (emphasis in original). *See Kelley v. John A. Biewer Co., Inc.*, No. 91-cv-1032, 1993 WL 186557, at *5 (W.D. Mich. 1993) (citing *Marrese* and noting that "jurisdictional competency is a prerequisite for a judgment in Michigan"). While the Estate mentions in its response that the Court should perhaps abstain from rendering a decision in this case, the Estate has filed no motion seeking abstention and offers no argument or authority in support of such a request. Notably, in the state court proceedings, BCBSM's motion to add L&W as a necessary party was opposed by the Estate and was denied. (ECF No. 9, L&W's Mot. Ex. 1, Washtenaw County Circuit Court Sept. 13, 2012 Order Denying Motion to Join a Necessary Party.) The Estate's efforts to prevent L&W from intervening to assert its rights, both in the state court proceedings and in the removed action that was before Judge Edmunds, undercuts any argument it might have for abstention here. *See General Auto Service Station, LLC v. City of Chicago*, 319 F.3d 902, 905 (7th Cir. 2003) (finding defendant estopped from arguing abstention where defendant opposed plaintiff's intervention in state court action). In any event, the Estate has merely alluded to the concept of abstention, has made no motion seeking abstention and sets forth no argument in support of abstention in its response.

enforce rights or clarify future benefits under an ERISA plan"); *Thiokol Corp. v. Mich. Dep't of Treasury*, 987 F.2d 376, 382 (6th Cir. 1993) (holding that ERISA provides for exclusive federal jurisdiction over all claims arising under ERISA).[4] Thus, L&W's claim for declaratory relief is properly before this Court.

## II. STANDARD OF REVIEW

"Motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) are analyzed under the same de novo standard as motions to dismiss pursuant to Rule 12(b)(6)." *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008) (citing *Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 697 (6th Cir. 2005)). "[T]he legal standards for adjudicating Rule 12(b)(6) and Rule 12(c) motions are the same . . . ." *Lindsay v. Yates*, 498 F.3d 434, 437 n. 5 (6th Cir. 2007). The Sixth Circuit has defined the pleading requirements necessary to withstand a challenge under Rule 12(c):

> We recently explained the pleading requirements that are necessary to survive a Rule 12(c) motion:

---

[4] It appears that at one point in the state court proceedings, the Estate took the position that L&W was not a self funded ERISA plan but had only purchased an insurance policy from BCBSM with a large ($150,000) deductible. However, it appears that the Estate has abandoned this position and in this action the Estate does not contest that ERISA governs these claims, that there was a Summary Plan Description that has all of the indicia of an ERISA plan or that since 2006, L&W has complied with federal tax reporting laws governing employee benefit plans and filed an Annual Return/Report of Employee Benefit Plan, declaring that it provides welfare benefits including medical insurance. Moreover, as discussed *supra*, Judge Edmunds has already concluded that these very claims arise under and are completely preempted by ERISA. There is no suggestion that the stop loss coverage provided by BCBSM for claims that exceed $150,000 in any way diminishes the status of the Plan as an ERISA Plan or the exclusive jurisdiction of this Court over the claims arising under the Plan. *See Lincoln Mut. Cas. Co. v. Lectron Pdcts, Inc. Employee Health Ben. Plan*, 970 F.2d 206, 210 (6th Cir. 1992) (holding that even if an ERISA plan is insured, or partially insured through stop-loss coverage, as opposed to fully self-funded, it is only subject to indirect regulation, i.e. state regulation of the company insuring the plan, and preemption principles still apply).

> In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Supreme Court explained that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.... Factual allegations must be enough to raise a right to relief above the speculative level...." *Id*. at 1964-65 (internal citations omitted). In *Erickson v. Pardus*, 550 U.S. ----, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007), decided two weeks after *Twombly*, however, the Supreme Court affirmed that "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Id*. at 2200 (quoting *Twombly*, 127 S.Ct. at 1964). The opinion in *Erickson* reiterated that "when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Id*. (citing *Twombly*, 127 S.Ct. at 1965). We read the *Twombly* and *Erickson* decisions in conjunction with one another when reviewing a district court's decision to grant a motion to dismiss for failure to state a claim or a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12. *Sensations, Inc.*, 526 F.3d at 295-96 (footnote omitted).

*Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 550 (6th Cir. 2008) (quoting *Sensations,* 526 F.3d at 295 (6th Cir. 2008)).

When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *DirectTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). But the court "need not accept as true legal conclusions or unwarranted factual inferences." *Id*. (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)). "[L]egal conclusions masquerading as factual allegations will not suffice." *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court explained that

7

"a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Id*. at 555 (internal citations omitted). Dismissal is appropriate if the plaintiff has failed to offer sufficient factual allegations that make the asserted claim plausible on its face. *Id*. at 570. The Supreme Court clarified the concept of "plausibilty" in *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009):

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007)]. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, at 557 (brackets omitted).

*Id*. at 1948-50. A plaintiff's factual allegations, while "assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *LULAC v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 127 S.Ct. at 1965). Thus, "[t]o state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *Bredesen*, 500 F.3d at 527 (citing *Twombly*, 127 S.Ct. at 1969).

In ruling on a motion for judgment on the pleadings, as with a motion to dismiss, the Court may consider the complaint as well as (1) documents that are referenced in the plaintiff's complaint or that are central to plaintiff's claims and (2) matters of which a court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). *See also Greenberg v. Life Ins. Co. Of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999) (finding that documents attached to a motion

to dismiss that are referred to in the complaint and central to the claim are deemed to form a part of the pleadings). Where the claims rely on the existence of a written agreement, and plaintiff fails to attach the written instrument, "the defendant may introduce the pertinent exhibit," which is then considered part of the pleadings. *QQC, Inc. v. Hewlett-Packard Co.*, 258 F. Supp. 2d 718, 721 (E.D. Mich. 2003). "Otherwise, a plaintiff with a legally deficient claims could survive a motion to dismiss simply by failing to attach a dispositive document." *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997).

## III. ANALYSIS

While the dispute over the Estate's right to receive duplicate payments for Mr. Wines's medical expenses has a long and convoluted procedural history, the issues before this Court presented by L&W's request for a declaratory judgment are discrete and straightforward: Can an SPD serve as an ERISA plan document where no other plan documents exist? Can the terms of an SPD be enforced where they do not conflict with the terms of other plan documents? The answer to both questions is yes and therefore the Court grants L&W's motion for judgment on the pleadings.

L&W argues that the relevant Plan documents in effect at the time that Mr. Wines was involved in the accident consisted of the employee Health Care Handbook ("the Handbook") (L&W's Mot. Ex. 3) and the L&W Engineering Associate Benefit Workbook ("the Workbook") (L&W's Mot. Ex. 4). L&W asserts in its Motion a litany of facts, undisputed by the Estate in its response, establishing that the Handbook and the Workbook contain all of the indicia of an ERISA plan, including: (1) the L&W Plan filed IRS Form 5500's from 2006-2009, declaring that they maintained an Employee Benefit Plan that qualified as an ERISA Plan offering welfare benefits including medical coverages; (2) the Handbook informs employees that BCBSM administers the

Plan for L&W and provides contact information for BCBSM; (3) the Handbook provides details regarding the types and levels of coverage that employees of L&W can expect to receive under the Plan; (4) the Handbook specifically informs employees that ERISA governs the Plan; (5) the Workbook distributed to employees informs plan participants of the protections of ERISA and the Plan number and Tax ID number for the Plan. (ECF No. 9, L&W's Mot. 5-8; L&W Mot. Ex. 4, p. 24; Ex. 3, p. I.)

The Estate does not dispute any of these assertions and characterizes the Handbook and the Workbook as in the nature of a Summary Plan Description ("SPD"). Referring to the Handbook, the Estate asserts that: "L&W is attempting to use a summary plan description to create or change the terms of an ERISA plan . . . ." (ECF No. 15, Def.'s Resp. 17.) Referring to both the Handbook and the Workbook, the Estate asserts that "the summary plan description generated by Blue Cross Blue Shield" is not a plan. (*Id.*) The Estate relies in part on the following language in the Handbook in support of its argument that the Handbook is not a Plan document:

> This handbook is not a contract. It is intended as a brief description of benefits. Every effort has been made to ensure the accuracy of the information within. However, if statements in this description differ from the applicable coverage documents, then the terms and conditions of those documents will prevail.

ECF No. 9, L&W's Mot. Ex. 3, p. I.

The Estate does not dispute that the plain language of the Handbook expressly excludes from coverage "services for which the patient is not obligated to pay." (ECF No. 9, L&W Mot. Ex. 3, p. 42.) Nor does the Estate dispute that neither Mr. Wines nor the Estate is obligated on any outstanding medical expense payments; Citizens has paid all of Mr. Wines's medical bills. The Estate argues, however, that the SPD (referring to the Handbook and the Workbook) cannot constitute an ERISA plan either because it conflicts with the "applicable coverage documents,"

which the Estate appears to claim is the Administrative Services Contract ("ASC") between L&W and BCBSM, or because there was no ERISA Plan document in effect at the time of Mr. Wines's accident.[5] The Estate argues that because the language that precludes double recovery of medical expense payments appears in the SPD and not in the ASC, or in any other "underlying document," the exclusion does not bar the Estate's claim for double dip benefits. The Estate is wrong because (1) the ASC is not a coverage document and in any event does not conflict with the exclusion found in the SPD and (2) an SPD can be the ERISA Plan document when it is the only Plan document in existence.

The Estate does not dispute L&W's assertion that the Handbook and the Workbook constitute an SPD and also concedes that the Handbook contains a provision precluding the double recovery the Estate seeks on behalf of Mr. Wines. (ECF No. 5, Answer to Complaint ¶¶ 11, 14.) The Estate argues, however, that the SPD cannot be an ERISA Plan document, that the underlying ASC contract is the only relevant "coverage" document and does not contain language precluding a double dip recovery. *Id.* ¶ 14-15. The Estate does not dispute that ERISA governs the outcome of this case, nor can it. Yet the Estate argues that there were no Plan documents in effect at the time of Mr. Wines's accident that precluded double recovery of his medical expense payments or, failing that argument, that the relevant plan document as they see it, i.e. the ASC, does not contain the exclusion against double dipping.

Conceding that ERISA governs this action, the Estate offers as sole support for its position

---

[5] The Estate concedes that as of March 17, 2010, when L&W revised its Plan document by incorporating all prior Plan documents into one document, double dip payments are excluded. The March 17, 2010 Plan document has no bearing on the Court's resolution of L&W's request for declaratory relief.

11

what it describes as the fortuitous timing of the Supreme Court's opinion in *CIGNA Corp. v. Amara*, 131 S.Ct. 1866 (2011). Counsel for the Estate has openly proclaimed that the Estate's interpretation of *Amara* is critical to its argument, explaining to Judge Shelton at the summary disposition hearing in Washtenaw County Circuit Court that the Estate was "lucky" that the *Amara* decision was rendered in time to save its case:

> I mean I was lucky a Supreme Court decision [*Amara*] came out. Before that there was plenty of appellate case law he cited in his brief this time, that before that they could use informal things, they could use summary plans, but with the *Cigna* decision they kinda said no . . . .

*Estate of Wines v. BCBSM and Citizens*, No. 12-108, Washtenaw County Circuit Court (Transcript of Feb. 27, 2013 Hearing at 11).

*Amara* does not support the broad proposition urged by the Estate, *i.e.* that an SPD can never serve as an ERISA plan document. As recently as May, 2011, notably in a decision rendered just two days after *Amara*, the Sixth Circuit recognized that where there is no formal ERISA plan separate and apart from the SPD, the SPD *is* the relevant plan document:

> When there are "no actual 'plans' separate and apart from the [summary plan descriptions] themselves," as is the case here, "the only relevant plan documents," if indeed there are any relevant plan documents, "are the [summary plan descriptions]." *Sengpiel v. B.F. Goodrich Co.*, 156 F.3d 660, 668 n. 6 (6th Cir. 1998); *see also Admin. Comm. of Wal–Mart Stores, Inc. Assoc. Health & Welfare Plan v. Gamboa*, 479 F.3d 538, 544 (8th Cir. 2007).

*Shaffer v. Rawlings Co.*, 424 F. App'x 422, 426 (6th Cir. 2011) (alterations in original).

In *Sengpiel*, relied on by the Sixth Circuit in *Shaffer*, this proposition was so obvious as to merit mention by Judge McKeague only as a factual notation in a footnote: "At the time the relevant SPDs were issued, there were no actual "plans" separate and apart form the SPDs themselves. Accordingly, the only relevant plan documents are the SPDs." 156 F.3d at 668 n. 6. In *Gamboa*,

12

also relied on by the Sixth Circuit in *Shaffer*, the court discussed why this must be so:

> The first welfare program listed in Appendix A, and the only group health plan listed, is entitled the "Wal–Mart Associates' Group Health Plan." Uncertainty arises because there is no written arrangement bearing this name. In fact, there appears to be no formal written arrangement purporting to be a group health plan, yet group health benefits were paid and are not disputed. . . . To hold that the only document providing health benefits is not a plan document would be to inappropriately permit an employer to avoid the written instrument requirement by treating this written document describing employee benefits as merely a summary of a plan that is nowhere else in writing. . . . It would be nonsensical to conclude that the plain language of the Plan requires an interpretation that renders no plan at all under the terms of ERISA. . . . In our opinion, the label of summary plan description on the Associate Benefits Book is not dispositive. The Plan Wrap Document contemplates a formal plan document, stating, "only the terms of the formal plan document of each such arrangement [are] incorporated herein." But this case presents a circumstance where there is a welfare program specified but no formal document with the same label, and no source of benefits exists aside from the written Associate Benefits Book. Where no other source of benefits exists, the summary plan description is the formal plan document, regardless of its label. . . . regardless of its label as a summary plan description, if a dispute had arisen over the amount of benefits due, the Administrative Committee would no doubt have been bound to provide benefits in accordance with this document.

479 F.3d at 543-45 (internal record citation omitted) (internal quotation marks and citations to authority omitted) (alteration in original).

So too here. L&W has been paying benefits pursuant to the Plan since the Plan's inception in 2005. L&W is not seeking to deny Mr. Wines benefits which he is due under the language of the Handbook and the Workbook - the only documents that explain the benefits to which employees are entitled. L&W is seeking to hold Mr. Wines to the undisputed terms of those Plan documents, which the Estate concedes preclude the double dip recovery it seeks. Surely if Mr. Wines were seeking to recover benefits due him under the plain language of the Handbook or the Workbook, he would be arguing that those documents constituted a valid ERISA Plan and that he was entitled to benefits thereunder.

*Amara* does nothing to change the analysis and conclusion in this case. At the heart of *Amara* is the requirement that there be a conflict between the language of the SPD and the controlling plan document before the terms of the SPD can be ignored or overriden. *See Liss v. Fidelity Employer Services Co.*, 516 F. App'x 468, 473 (6th Cir. 2013) ("*Amara* does not support Liss's argument because there is no conflict between the SSIP and the SPD in the case at hand."); *Bidwell v. University Med. Center*, 685 F.3d 613, 620 n. 2 (6th Cir. 2012) (concluding that absent an actual conflict between the language of the plan summary and the plan itself, the court need not consider the applicability of *Amara*). The Estate in this case has failed to identify any conflict between the Handbook and Workbook (collectively the SPD) or between the SPD and any other coverage document. The plain language of the Handbook undisputedly excludes double dip recovery (ECF No. 9, L&W's Mot. Ex. 3, p. 42 (precluding coverage for services for which the patient is not obligated to pay) and p. 61 (granting BCBSM a right to subrogation)) and the Workbook is silent on the availability of double dip recoveries. Importantly, the subrogation provision contains an exception if the employee purchased in his own name duplicate insurance from another company. Mr. Wines did not purchase any insurance in this case - his medical benefits were paid by the no-fault insurer of the automobile involved in the accident, at no cost to Mr. Wines or his Estate. Mr. Wines paid nothing for those benefits. The policy goals of permitting double dip recoveries when the insured has negotiated and paid for such additional benefits are clearly not implicated in this case. *See Harris v. Auto Club Ins. Ass'n*, 494 Mich. 462, 472 (2013) (reiterating prior holdings of the Michigan Supreme Court requiring that "an insured must pay a premium to obtain insurance policies that provide for double recovery"). Mr. Wines paid no such premium

here.[6]

The Estate urges the Court to consider two post-*Amara* decisions as evidence that as a blanket rule an SPD cannot be considered an ERISA plan document. (ECF No. 39, Estate's Reply 4.) In fact, neither case supports such a proposition. In *Eugene v. Horizon Blue Cross Blue Shield of New Jersey*, 663 F.3d 1124 (10th Cir. 2011), the Tenth Circuit noted that in *Amara*, the Supreme Court expressly considered whether terms of an SPD that conflicted with the terms of the governing plan document, and in fact constituted faulty disclosures, could be enforced. *Id.* at 1131. In *Eugene*, because there was no demonstrated conflict between the SPD and the governing Plan document, *Amara* did not foreclose enforcement of the terms of the SPD. *Id.* at 1132. *Eugene* is inapposite, If relevant at all, *Eugene* stands for the proposition that *Amara* is inapplicable absent a conflict between the SPD and a formal plan document. Likewise, in *Bender v. Newell Window Furnishings, Inc.*, 681 F.3d 253 (6th Cir. 2012), the Sixth Circuit merely noted that after *Amara*, the terms of an SPD could not be enforced over the conflicting terms of the ERISA plan itself. *Id.* at 265 n. 9. Again, the Estate has identified no other ERISA plan document which conflicts with the exclusion of double dip payments.

In neither *Eugene* nor *Bender* was the court comparing an SPD to an administrative services

---

[6] This result also is consistent with the goal of ERISA to preserve plan assets for all participants and to reject windfalls to individual plan participants such as result from the payment of expenses that the participant was not legally obligated to pay. *See Perry v. United Food and Commercial Workers District Unions*, 64 F.3d 238, 244-45 (6th Cir. 1995) (finding "very good reason for the plan provision excluding benefits which a beneficiary or plan participant is not legally obligated to pay," noting that payment of expenses that a participant is not legally obligated to pay would result in a windfall to the participant and a reduction of plan assets to pay expenses of other plan participants who incur legally enforceable expenses). Although the Estate complains that L&W is only obligated on the first $150,000 of a participant's expenses, this does not diminish the force of this logic in any way and, as noted above, the purchase of stop loss insurance by a self funded plan does not negate its status as an ERISA plan.

15

contract between the plan sponsor and the administrator, as the Estate urges the Court to do here. The Court rejects the Estates' suggestion that the ASC is the underlying ERISA plan document. The ASC is a contract between BCBSM and L&W that governs the relationship between those parties. It contains no benefit-defining language, does nothing to apprise plan participants of their benefits or rights under the Plan and is not a Plan document. *See Fritcher v. Health Care Services Corp.*, 301 F.3d 811, 817 (7th Cir. 2002) (finding that Administrate Services Agreement, similar to the ASC in this case, is not a plan document, noting that a "formal plan document is one which a plan participant could read to determine his or her rights or obligations under the plan") (internal quotation marks and citation omitted); *Moeckel v. Caremark, Inc.*, 622 F. Supp. 2d 663, 681-82 (M.D. Tenn. 2007) (finding that service contract between employer/plan sponsor and administrator is not a plan document and not part of an ERISA plan); *Local 56, United Food and Commercial Workers Union v. Campbell Soup Co.*, 898 F. Supp. 1118, 1136 (D.N.J. 1995) (finding that Administrative Services Agreement was not a formal plan document although it attached an SPD as an exhibit because "a formal plan document is one which a plan participant could read to determine his or her rights or obligations under the plan," and finding the ASA merely memorialized the obligations of the employer and the insurer/administrator of the plan to one another) (citing *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83 (1974)). The Estate cites no authority for the proposition that an administrative services contract such as the ASC in this case constitutes an ERISA plan document. Even if it were a Plan document, the ASC contains no language that could be interpreted as in conflict with the SPD's exclusion of double dip recovery.

## IV. CONCLUSION

Where, as here, no formal Plan document was in existence, the SPD (here the Handbook and the Workbook) *is* the Plan document. Citizens has paid all of Mr. Wines's medical expenses and the Estate does not dispute that the plain language of the Handbook excludes a double dip recovery for medical expenses that Mr. Wines is not legally obligated to pay. Nor does the Estate endeavor to explain why the logic of *Harris*, which dictates that an insured is not entitled to double dip recoveries for which the insured has not independently paid a premium, does not apply to bar the Estate's claims in this case, when Mr. Wines has paid no such premium.

The Court concludes that the plain language of the Handbook, a governing ERISA Plan document in effect at the time of Mr. Wines's accident, precludes a double dip recovery for medical expenses not actually owed by a plan participant. Accordingly, the Court GRANTS L&W's Motion for Judgment on the Pleadings and declares that, as between the Plan and the Estate, the Plan is not obligated to pay any claims or expenses relating to Mr. Wines's June 14, 2008 accident for which payment has already been made.

IT IS SO ORDERED.

                                                    s/Paul D. Borman
                                                    PAUL D. BORMAN
                                                    UNITED STATES DISTRICT JUDGE

Dated: January 13, 2014

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on January 13, 2014.

                                                s/Deborah Tofil
                                                Case Manager